```
            IN THE UNITED STATES DISTRICT COURT

               FOR THE DISTRICT OF HAWAII
```

| | |
|---|---|
| MICHAEL THOMAS, JR.,           ) | CIVIL NO. CV07-00382 SOM/LEK |
|            Plaintiff,     ) | |
|     vs.                       ) | ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS |
| STATE OF HAWAII DEPARTMENT OF ) PUBLIC SAFETY; NIMISA T. SAVEA, Individually and in his Capacity as an Adult Corrections Officer; JACOB LIANA, Individually and in his Capacity as an Adult Corrections Officer; EDWIN DEUZ, Individually and in his Capacity as an Adult Corrections Officer; et al. ) | |
|            Defendants.   ) | |

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION TO DISMISS

I. INTRODUCTION.

This removed action involves claims arising from an incident at the Oahu Community Correction Center ("OCCC") in which Plaintiff Michael Thomas, Jr., claims to have been assaulted by Adult Correction Officers Nimesa T. Savea, Jacob Liana, and Edwin Deuz, all named as Defendants in their individual and official capacities. Thomas originally filed his Complaint in state court on June 22, 2007. Defendants removed the action to this court on July 19, 2007. See Notice of Removal (July 19, 2007).

On March 19, 2008, Thomas filed a First Amended Complaint. On April 16, 2008, Defendants filed a motion to dismiss Counts I and IX of that Complaint. Pursuant to Local Rule 7.2(d), that motion is granted in part and denied in part without a hearing. To the extent the First Amended Complaint asserts that the State of Hawaii Department of Public Safety or any guard in an official capacity violated 42 U.S.C. § 1983, the court dismisses the claim because the State and a State official acting in an official capacity are not suable persons for purposes of § 1983. To the extent the First Amended Complaint asserts § 1983 claims against the guards in their individual capacities, the court denies the motion to dismiss without prejudice, as the guards have failed to demonstrate on this motion that Thomas did not exhaust his administrative remedies. To the extent the First Amended Complaint asserts a malicious prosecution claim against Savea, the court dismisses that claim because it fails to allege a viable claim.

II.      FACTUAL BACKGROUND.

Thomas alleges that, on or about November 28, 2005, he was an inmate at OCCC. First Amended Complaint (March 19, 2008) ¶ 9. Thomas says that, while walking between Module 2 and the medical unit of OCCC, he was "jumped" and assaulted by Savea, a prison guard. Id. ¶¶ 10-12. Thomas alleges that Liana and Duez, other prison guards, held Thomas while Savea continued to assault

him.  Id. ¶ 14.  Thomas contends that Savea then filed a false report accusing Thomas of having assaulted Savea, causing Thomas to be wrongfully prosecuted.  Id. ¶ 15.  It is undisputed that the criminal prosecution of Thomas was dismissed without prejudice on the ground that the prosecutor violated state law by failing to provide the Grand Jury with clearly exculpatory evidence--the videotape of the incident.  See Findings of Fact, Conclusions of Law and Order Granting Defendant's Motion to Dismiss Indictment for Failure to Present Clearly Exculpatory Evidence to Grand Jury (Oct. 25, 2006) (attached to Opposition as Exhibit 1).

      The State of Hawaii has a policy regarding inmate grievances and appeals ("Policy").  This Policy, Number 493.12.03, sets forth the administrative exhaustion requirements inmates at OCCC must satisfy before filing claims in court under 42 U.S.C. § 1983.  See Department of Public Safety Policies and Procedures Manual re: Inmate Grievance and Appeals Process, Number 493.12.03 (Apr. 3, 1992) (a copy of which is filed as Document No. 44 on this court's CM/ECF system).

      When an inmate arrives at OCCC, an "oral explanation of the grievance procedure" is supposed to be given to the inmate.  Policy ¶ 4.0.7.a.  Basically, there are three steps to the grievance procedure.  When an inmate files a grievance, a staff person "designated to answer the grievance has fifteen (15)

working days from the date of receipt of the complaint/grievance in which to investigate and respond." Policy ¶ 4.0.14.h. This is "step one" of the administrative process. When an inmate receives "the step one decision, the inmate has up to five (5) calendar days to initiate further action if the inmate is not satisfied with the disposition of the complaint/grievance." Policy ¶ 4.0.14.k. An appeal of a step one decision is taken to the Facility Administrator. Policy ¶ 4.0.15.

The Policy provides that "[e]xpiration of a time limit at any level allows the inmate to move to the next level, unless the grievant agrees in writing to an extension for a response." Policy ¶ 4.0.14.l. Accordingly, in step one, "[s]hould the fifteen (15) working days elapse without the inmate receiving a written response, an appeal directly to the Facility Administrator may be initiated." Policy ¶ 4.0.14.i.

An appeal to the Facility Administrator is step two of the exhaustion process. "The Facility Administrator has fifteen (15) working days from the day of receipt of the appeal in which to submit a written response to the inmate." Policy ¶ 4.0.15.e. When an inmate receives the Facility Administrator's written decision, "the inmate has up to five (5) calendar days to initiate further action if dissatisfied with the decision made by the Facility Administrator." Policy ¶ 4.0.15.f. As with step one, "[s]hould the 15 working days elapse without the inmate

receiving a written response, an appeal directly to the appropriate Division Administrator may be initiated." Policy ¶ 4.0.15.e.

An appeal from the step two process is taken to the Division Administrator. Policy ¶ 4.0.15.g. This is step three of the process. "The Division Administrator has twenty (20) working days from the receipt of the appeal in which to submit a written response to the inmate." Policy ¶ 4.0.15.g.6. The decision of the Division Administrator is final and "the ultimate recourse available to inmates within the administrative remedy process." Policy ¶ 4.0.16.a.

There is also a procedure for filing emergency grievances directly with the Facility Administrator. Policy ¶ 4.0.11.

On November 30, 2005, two working days after he was allegedly assaulted, Thomas filed a step one grievance. See State of Hawaii - Department of Public Safety Inmate Grievance/Complaint (Nov. 30, 2005) (attached to Opposition as Ex. A). On December 22, 2005, John Manumaleuna, Chief of Security, responded: "Be advised that the incident is being investigated." Id. That response also stated that, "If you are dissatisfied with this decision, commencing with the date of receipt, you will have five (5) calendar days in which to file an appeal." Id.

Although Thomas was told in December 2005 that the incident was being investigated, prison officials never told Thomas what the result of the investigation was. It is not clear whether anyone told Thomas that, in addition to appealing the step one decision, he had the right under the Policy to appeal the lack of a decision. It is undisputed that Thomas did not appeal his step one grievance.

On May 12, 2007, Thomas filed an "emergency" grievance about the November 2005 assault. James Kaneshiro, Inmate Grievance Specialist, returned the grievance to Thomas without processing it on the grounds that it was untimely and that Thomas had already filed a grievance concerning the incident. See State of Hawaii - Department of Public Safety Inmate Grievance/Complaint (May 12, 2007) and Response (May 20, 2007) (attached to Opposition as Ex. B).

III.     ANALYSIS.

    A.   To the Extent Thomas Asserts § 1983 Claims Against the State and State Officials Acting in Their Official Capacities, His Claims are Dismissed.

The First Amended Complaint alleges § 1983 claims based on violations of the Fourteenth Amendment and Eighth Amendment. Those alleged violations are actionable under § 1983, which states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be

>           subjected, any citizen of the United States
>           or other person within the jurisdiction
>           thereof to the deprivation of any rights,
>           privileges, or immunities secured by the
>           Constitution and laws, shall be liable to the
>           party injured in an action at law, suit in
>           equity, or other proper proceeding for
>           redress, except that in any action brought
>           against a judicial officer for an act or
>           omission taken in such officer's judicial
>           capacity, injunctive relief shall not be
>           granted unless a declaratory decree was
>           violated or declaratory relief was
>           unavailable.  For the purposes of this
>           section, any Act of Congress applicable
>           exclusively to the District of Columbia shall
>           be considered to be a statute of the District
>           of Columbia.

42 U.S.C. § 1983.

The Ninth Circuit has held that, when a state removes a case to federal court, it waives its Eleventh Amendment immunity with respect to state law claims. See Bank of Lake Tahoe v. Bank of Am., 318 F.3d 914, 917 (9th Cir. 2003) ("at least for purposes of state law claims, a state waives its immunity to suit in a federal court when it removes a case from state court") (citing Lapides v. Board of Regents, 535 U.S. 613 (2002)).  However, removal is not a blanket waiver of the Eleventh Amendment with respect to federal claims.  Notwithstanding the removal of a § 1983 claim to federal court, the state and its officials acting in their official capacity may still seek dismissal of § 1983 claims for money damages.  Id. at 917-18.  Such claims "fail under the well-established principle reiterated in Lapides: A state and its officials acting in their official capacities are

not considered 'persons' within the meaning of § 1983." Id. at 918.

Accordingly, to the extent Thomas seeks monetary damages under § 1983 from the State of Hawaii Department of Public Safety or the prison guards in their official capacities, those claims are dismissed because those Defendants are not "persons" who can be liable for money damages under § 1983. See 42 U.S.C. § 1997e(c)(1) ("The court shall on its own motion or on the motion of a party dismiss any action brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility if the court is satisfied that the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.").

In so dismissing the § 1983 claims, the court applies a legal standard similar to a motion under Rule 12(b)(1) of the Federal Rules of Civil Procedure. The court dismisses those claims because the facts alleged in the First Amended Complaint, taken as true, definitively show that Thomas cannot maintain the § 1983 claims against the State and the State officials acting in their official capacities. See Federation of African Am. Contractors v. City of Oakland, 96 F.3d 1204, 1207 (9th Cir. 1996) (when the motion to dismiss attacks the allegations of the

complaint as insufficient to confer subject matter jurisdiction, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party).

> B.  On The Present Record, the Court Cannot Determine Whether Thomas Exhausted His "Available" Administrative Remedies Before Filing His § 1983 Claims Against the Prison Guards in Their Individual Capacities.

Pursuant to the Prison Litigation Reform Act ("PLRA"), "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  The Supreme Court has ruled that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).  Accordingly, the PLRA's exhaustion requirement applies to Thomas's excessive force claims brought under § 1983, as those claims concern "prison conditions."

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Woodford v. Ngo, 548 U.S. 81, ---, 126 S. Ct. 2378, 2386 (2006).

9

The PLRA requires inmates to exhaust administrative remedies before filing suit, and district courts are required to dismiss unexhausted claims without prejudice.  McKinney v. Carey, 311 F.3d 1198, 1199-1201 (9th Cir. 2002).

Defendants have the burden of demonstrating that an inmate has failed to exhaust his or her administrative remedies for purposes of the PLRA.  See Jones v. Bock, 549 U.S. 199, ---, 127 S. Ct. 910, 921 (2007) ("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."); Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003) ("We hold that § 1997e(a) creates a defense--defendants have the burden of raising and proving the absence of exhaustion.").

The Ninth Circuit has "held that the failure to exhaust nonjudicial remedies that are not jurisdictional should be treated as a matter in abatement, which is subject to an unenumerated Rule 12(b) motion rather than a motion for summary judgment".  Wyatt, 315 F.3d at 1119.  In deciding a motion to dismiss for failure to comply with the PLRA's exhaustion requirement, this court "may look beyond the pleadings and decide disputed issues of fact."  Id. at 1120.  This court may therefore "rely on evidence outside the record."  Brown v. Valoff, 422 F.3d 926, 939 n.13 (9th Cir. 2005).

Defendants move to dismiss the § 1983 claims asserted in Count I of the First Amended Complaint, arguing that Thomas did not exhaust his administrative remedies because Thomas only filed a step one grievance.  On the present record, the court declines to dismiss Count I on exhaustion grounds.  It is not at all clear that Thomas knew or should have known that he was allowed to appeal his step one grievance when it was not timely decided.

In the first place, the record does not establish that Thomas was actually told about the grievance procedure or that it was made available to him.  The court has reviewed the prison Policy submitted by the State and recognizes that it directs that the grievance procedure be orally explained to inmates when they arrive at OCCC.  However, nothing in the record even suggests that the Policy was followed with respect to Thomas, even assuming it is fair to expect him to remember the deadlines told to him only orally long before he actually submitted any grievance.

In the second place, the written notice of the step two grievance deadline is highly ambiguous.  In December 2005, Thomas was told that his grievance was being investigated and that he could appeal "this decision" within five calendar days.  Thomas certainly could have been under the impression that his step one grievance had not actually been decided yet and that the words

"this decision" referred to a future decision in this case, not to the ongoing investigation. Thus, Thomas could reasonably have believed that the five-day appeal period had not yet begun to run. Under these circumstances, it may be that this court should deem Thomas to have exhausted all of his available administrative remedies, as prison officials may be responsible for Thomas's failure to avail himself of all the administrative remedies available at the prison.

       The court is concerned that the prison told Thomas that it was investigating the incident but then never told him the result of the investigation. The prison does not even claim that the administrative process was somehow halted by the bringing of a criminal charge against Thomas. Now, two and a half years after the incident, Thomas apparently still has no decision on his step one grievance. While the Policy permitted Thomas to move to step two, it did not require him to do so and there is nothing in the record indicating that Thomas even knew about his right to appeal in the face of OCCC's inaction on his step one grievance. The Policy further provided that Thomas could agree in writing to an extension for the prison's response to his step one grievance. As there is no deadline stated for such a written extension agreement, Thomas could presumably submit an agreement even today. However, Thomas may be justified in concluding that OCCC's lengthy inaction establishes that there are no

administrative remedies available to him.  See Brown v. Valoff, 422 F.3d 926, 943 n.18 (9th Cir. 2004) (noting that prison officials should not be allowed to "exploit the exhaustion requirement through indefinite delay in responding to grievances" and that such delay "may demonstrate that no administrative process is in fact available").  Movants do not, on the present record, meet their burden of establishing that Thomas failed to exhaust administrative remedies that were actually available to him.

> C.   The Malicious Prosecution Claim Asserted in Count IX is Dismissed.

In Count IX of the First Amended Complaint, Thomas asserts a malicious prosecution claim against Savea.  Thomas says that Savea gave false information to prosecutors, causing Thomas to be charged with felony assault.  See First Amended Complaint ¶¶ 40-41.  Thomas notes that the state court dismissed the assault charge.  Id. ¶ 42.  It is undisputed, however, that the criminal assault charge was not dismissed based on the merits of the case, but rather because the prosecutor failed to provide the Grand Jury with clearly exculpatory evidence, as required by state law.  The state court dismissed the criminal charge without prejudice to its refiling.  See Findings of Fact, Conclusions of Law and Order Granting Defendant's Motion to Dismiss Indictment for Failure to Present Clearly Exculpatory Evidence to Grand Jury (Oct. 25, 2006) (attached to Opposition as Exhibit 1).

13

Under Hawaii law, there are three essential elements to the tort of malicious prosecution: (1) the prior proceedings must have terminated in the plaintiff's favor; (2) the prior proceedings must have been initiated without probable cause; and (3) the prior proceedings must have been initiated with malice. Reed v. City & County of Honolulu, 76 Haw. 219, 230, 873 P.2d 98, 109 (1994) (citations omitted) (emphasis omitted).

This court examines whether Thomas has pled a viable malicious prosecution claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Under that rule, review is generally limited to the contents of the complaint and all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001); Campanelli v. Bockrath, 100 F.3d 1476, 1479 (9th Cir. 1996); Fed'n of African Am. Contractors, 96 F.3d at 1207.

On this motion, only the first element relating to whether the underlying lawsuit was terminated in favor of Thomas is at issue. A "plaintiff in a malicious prosecution suit has satisfied the first element if the termination was in his favor and in such a manner that it cannot be revived." Wong v. Panis, 7 Haw. App. 414, 419, 772 P.2d 695, 699 (1989) (quotation omitted), abbrogated on other grounds by Hac v. Univ. of Haw., 102 Haw. 92, 73 P.3d 46 (2003). "The requirement is met when

14

there has been an adjudication in the plaintiff's favor on the merits, or the termination reflects on the merits." Id.  It is undisputed that Thomas's assault charge was dismissed without prejudice on a procedural ground, meaning that Thomas could still be charged with an assault arising out of the same facts.  Such a dismissal is insufficient to satisfy the first prong of the test for malicious prosecution, as it does not demonstrate that the state court criminal charge was terminated in Thomas's favor on the merits.  Accordingly, Thomas's First Amended Complaint fails to assert a viable malicious prosecution claim.

      In his Opposition, Thomas asks this court to stay his malicious prosecution claim until such time as the statute of limitation on that claim has run.  The court denies that request.  Even if the court waits until the assault charge cannot ever be brought, there would not have been a dismissal of the criminal assault charge on the merits.  The fact that a charge could no longer be brought due to the passage of time does not change the character of the dismissal of the assault charge on procedural grounds.  It does not mean that, as a result of the dismissal of the charge, Thomas can no longer be charged with the same crime.  It only means that, through the passage of time, rather than the dismissal of the charge, Thomas can no longer be charged with the alleged assault.  The Intermediate Court of Appeals for the State of Hawaii has rejected a similar claim that argued that a

15

termination of a claim based on the statute of limitations satisfied the first prong of the malicious prosecution test.  <u>See</u> <u>Wong</u>, 7 Haw. App. at 420, 772 P.2d at 699 ("Termination of a claim by the statute of limitations does not reflect on the merits of the claim.").

IV.     <u>CONCLUSION.</u>

For the foregoing reasons, the court grants Defendants' motion to dismiss in part and denies it in part.  The court dismisses the § 1983 claim asserted in Count I to the extent it seeks monetary damages from the State of Hawaii Department of Public Safety or Savea, Liana, and Duez in their official capacities.  The court denies the motion to dismiss without prejudice to the extent the First Amended Complaint asserts § 1983 claims against Savea, Liana, and Duez in their individual capacities.  The guards may reassert a lack of exhaustion in a new motion based on a different record.  Finally, the court dismisses the malicious prosecution claim asserted in Count IX against Savea.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, May 16, 2008.



/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

<u>Thomas v. State of Hawaii Department of Public Safety</u>, Civ. No. 07-00382 SOM/LEK; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS